UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

**CADENCE J. MORTON**
    Plaintiff,

v

**SPECTRUM HEALTH SYSTEM
(FORMERLY, SPECTRUM HEALTH)
AND PRIORITY HEALTH**
    Defendants.

Case No.:  1:18-cv-000371

Hon. Robert J. Jonker

Plaintiff's First Amended
Complaint and Demand for Jury

___

Christine A. Yared (P37472)
*Christine A. Yared, PLC*
Attorney for Plaintiff
2503 Mason Ridge Court NE
Grand Rapids, MI  49525
616.363.9041
cayared@comcast.net

___

## Jurisdiction and Venue

1. Plaintiff, Cadence J. Morton ("Plaintiff") is a female and a resident of the Caledonia, Michigan.

2. Defendant Spectrum Health System ("Defendant Spectrum Health") is a Michigan Nonprofit Healthcare System, which receives tax-exempt status under section 501(c)(3) of the Internal Revenue Code.

3. Upon information and belief, Spectrum Health System, was formerly known as Spectrum Health.

4. Defendant Priority Health ("Priority Health") is a Michigan Nonprofit Healthcare System, which receives tax-exempt status under section 501(c)(4) of the Internal Revenue Code.

5.	Spectrum Health owns 100% of Priority Health's Class A common stock, and has a 93.85% ownership interest in Priority Health.

6.	Defendant Spectrum Health's principal place of business is in the Western District of Michigan.

7.	Defendant Priority Health's principal place of business is in the Western District of Michigan.

8.	The events giving rise to this cause of action occurred in the Western District of Michigan.

9.	This action seeks damages against Defendant Spectrum Health for sex/gender identity discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e, et seq., against Defendants Spectrum Health and Priority Health for violation of The Patient Protection and Affordable Care Act ("ACA"), Section 1557, 42 USC Section 18116 (2112) ("Section 1557"), against Defendant Priority Health for Fraud and Misrepresentation under Michigan law, and in the alternative to Plaintiff's claim for Fraud and Misrepresentation, against Defendant Priority Health for Negligent Misrepresentation under Michigan law.

10.	At all relevant times, Defendant Spectrum Health has been an employer, covered within the meaning of Title VII.

11.	At all relevant times, Defendant Priority Health has been a health program or activity, as defined by Section 1557 of the ACA.

12.	Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") on or about September 25, 2015.

13.	Plaintiff received a "Right to Sue" letter from the EEOC on or about January 3, 2018. (Exhibit 1)

14. Plaintiff filed a timely charge of sex discrimination with the EEOC and has filed this action within 90 days of receiving her notice of her right to sue.

## Common Allegations

15. Plaintiff began working for Michigan Medical PC ("MMPC") on or about July 26, 2004.

16. MMPC later merged with Defendant Spectrum Health and Plaintiff became an employee of Defendant Spectrum Health on January 1, 2010.

17. Defendant Spectrum Health's records provide that Plaintiff's first date of employment is July 26, 2004.

18. Plaintiff works in the Information Services department and her title is Lead Application Development Analyst.

19. The Spectrum Health Medical Group spanning over 12 counties in Michigan, with 1,600 physicians and advanced practice providers in more than 110 adult and pediatric specialties.

20. Defendant Spectrum Health has a nondiscrimination policy which states, "We are an Equal Opportunity Employer and do not discriminate against any employee or applicant for employment because of race, color, sex, age, national origin, religion, sexual orientation, gender identity, status as a veteran, and basis of disability or any other federal, state or local protected class."

21. For the purposes of their nondiscrimination policy, Defendant Spectrum Health defines "sex" to include "discrimination on the basis of gender, pregnancy, false pregnancy, termination of pregnancy or recovery therefrom, childbirth or related medical conditions, sex stereotyping and gender identity."

22. Defendant Spectrum Health's nondiscrimination policy applies to "…wages, benefits and all other privileges, terms, and conditions of employment."

23. Defendant Priority Health has a nondiscrimination policy which states, "Priority Health complies with applicable Federal civil rights laws and does not discriminate on the basis of race, color, national origin, age, disability, or sex. Priority Health does not exclude people or treat them differently because of race, color, national origin, age, disability, or sex."

24. "Gender identity" is a well-established medical concept which refers to one's internal sense of oneself as belonging to a particular gender.

25. There are many biological components of sex including chromosomal, anatomical, hormonal, and reproductive elements, some of which could be ambiguous or in conflict within an individual.

26. Typically, people who are designated female at birth based on their external anatomy identify as girls or women, and people who are designated male at birth identify as boys or men.

27. For transgender individuals, the sense of one's self---one's gender identity---differs from the sex assigned to them at birth.

28. Transgender women are women who were assigned "male" at birth, but have a female gender identity. Transgender men are men who were assigned "female" at birth, but have a male gender identity.

29. Plaintiff is a transgender woman.

30. Plaintiff has a female gender identity even though the sex assigned to her at birth was male.

31. Plaintiff was diagnosed with gender dysphoria, and began the medical portion of her treatment in 2011.

32. Plaintiff was diagnosed with gender dysphoria in 2011.

33. Plaintiff began the process of transitioning to her female identity in February 2011.

34. Gender dysphoria, previously known as "gender identity disorder," is serious medical condition defined as strong, persistent feelings of incongruence between a person's experienced gender and that which was assigned to the person at birth, which results in clinically significant distress or impairment.

35. Gender dysphoria is recognized as a medical condition in the *Diagnostic and Statistical Manual of Mental Disorder*, published by the American Psychiatric Association. A clinical description of gender dysphoria also appears in the World Health Organization's *International Statistical Classification of Diseases and Related Health Problems*.

36. Gender dysphoria is well-recognized in the medical and health care community by physicians, other health care providers and associations including the American Medical Association, the American Psychiatric Association, and the American Psychological Association.

37. The widely accepted standards of care for treating gender dysphoria are published by the World Professional Association for Transgender Health ("WPATH"). The WPATH Standards of Care have been recognized as the authoritative standards of care by the leading medical organizations, including the American Medical Association, the American Psychological Association, and the American Academy of Pediatrics.

38. Defendant Priority Health has also recognized the WPATH Standards of Care as being the authoritative standards of care for gender dysphoria.

39. WPATH standards provide that medically necessary treatment for gender dysphoria may require medical steps to affirm one's gender identity and transition from living as one gender to another. This treatment, often referred to as transition-related care, may include hormone therapy, surgery (referred to as "gender confirmation surgery," "transition-related surgery," or "sex reassignment surgery"), and other medical services that align individuals' bodies with their

5

gender identities. The exact medical treatment varies based on the individualized needs of the person.

40. According to every major medical organization and the overwhelming consensus among medical experts, treatment for gender dysphoria, including surgical procedures, are medically necessary when clinically indicated to treat gender dysphoria.

41. The American Medical Association ("AMA") recognized that gender dysphoria is a "serious medical condition" which, "if left untreated, can result in clinically significant psychological distress, dysfunction, debilitating depression and, for some people without access to appropriate medical care and treatment, suicidality and death." (AMA Resolution 122, June 16, 2008)

42. The American Medical Association ("AMA") opposes categorical exclusions of coverage for treatment of gender dysphoria when prescribed by a physician, stating "many of these same treatments…are often covered for other medical conditions" and that "the denial of these otherwise covered benefits for patients suffering from GID represents discrimination based solely on a patient's gender identity. (AMA Resolution 122, June 16, 2008)

43. The American Psychiatric Association, the American Psychological Association and the American Academy of Pediatrics have all issued resolutions similar to AMA Resolution 122.

44. According to federal courts, categorical exclusions of transition-related healthcare are so far outside the bounds of accepted medical practice that they constitute deliberate indifference to a serious medical need when used as a justification for denying healthcare to prisoners.

45. Plaintiff's treatment for her gender dysphoria has included psychological therapy, hormone therapy, medical procedures and surgeries, including sex reassignment surgery.

46. Plaintiff has not completed her medically necessary treatment.

47. As an employee of Defendant Spectrum, Plaintiff's health care insurance is through Defendant Priority Health.

48. Defendant Priority Health has failed to cover a significant portion of Plaintiff's medical treatment, including her surgeries.

49. Plaintiff communicated with top management officials at Defendant Spectrum Health and Defendant Priority Health about her medical condition and need for health insurance to cover her treatment.

50. In response to Plaintiff's communications described in paragraph 49 above, Defendants' responses included inaccurate and inappropriate statements.

51. Defendants failed to take any action to correct Plaintiff's health care coverage needs.

### Defendants' Health Care Plan Coverage

52. Defendants' 2015 health care insurance Certificate of Coverage provides as follows: "Sex Change or Transformation, Non-Covered Services – Any procedure or treatment, including hormone therapy, designed to change your physical characteristics from your biologically determined sex to those of the opposite sex.  This exclusion applies despite any diagnosis of gender role or  psychosexual orientation problems."

53. Defendants' 2015 health care insurance Certificate of Coverage provides coverage for various types of "cosmetic or reconstructive surgery/medically indicated" that are not related to gender dysphoria.

54. Defendants' 2016 health care insurance Certificate of Coverage provides as follows: "Sex Change or Transformation, Non-Covered Services – Any procedure or treatment, including hormone therapy, designed to change your physical characteristics from your biologically determined sex to those of the opposite sex.  This exclusion applies despite any diagnosis of

gender role or psychosexual orientation problems."

55. Defendants' 2016 health care insurance Certificate of Coverage provides coverage for "cosmetic or reconstructive surgery/medically indicated" reconstructive surgery that is not related to gender dysphoria.

56. Upon information and belief, Defendants made no effort to obtain medical information about the various biological components of sex, such as the chromosomal, anatomical, hormonal, and reproductive elements, some of which could be ambiguous or in conflict with each other, or whether Plaintiff was designated female at birth based on her external anatomy.

57. Defendants' 2017 health care insurance Certificate of Coverage provides as follows: "Sex Change or Transformation - Services for sex change or transformation will be considered under this Certificate if Medically/Clinically Necessary as determined in accordance with our medical policies. Covered Services are limited to specific treatments outlined in our medical policies and must be provided by a facility approved in advance by us. Covered Services - Gender reassignment surgery, including pre-and post-hormone therapy. Non-Covered Services – Any procedure or treatment that in not Medically/Clinically Necessary or is considered cosmetic, experimental or investigational."

58. Defendants' 2018 health care insurance Certificate of Coverage provides as follows: "Sex Change or Transformation - Services for sex change or transformation will be considered under this Certificate to the extent as required, limited, and/or enforceable by applicable state and/or federal law, when all criteria listed in our medical and behavior health policies are met, and if Medically/Clinically Necessary as determined in accordance with our medical policies and behavioral health policies. Covered Services are limited to specific treatments outlined in our medical and behavioral health policies and must be provided by a facility approved in advance

by us. Covered Services - Gender reassignment surgery, including pre-and post-hormonetherapy, is a Covered Services to the extent as required, limited, and/or enforceable by applicable state and/or federal law, and the above criteria is met, including being provided by a facility approved in advance by us. Non-Covered Services – Any procedure or treatment that in not Medically/Clinically Necessary or is considered cosmetic, experimental or investigational."

59.     Defendants' 2018 health care insurance Certificate of Coverage provides coverage for various types of "cosmetic or reconstructive surgery/medically indicated" that is not related to gender dysphoria, without adding the limiting language, "to the extent as required, limited, and/or enforceable by applicable state and/or federal law."

60.     Plaintiff requires additional medical treatment, including surgery for her gender dysphoria.

61.     In January 2018, Plaintiff contacted Defendant Priority Health to determine whether she would have insurance coverage for her gender dysphoria treatment.

62.     On January 25, 2018, Defendant Priority Health informed her that "Effective January 1, 2018, your Priority Health Plan will no longer cover Gender Reassignment Surgery. This policy change has no impact on gender related behavioral health services or pharmaceutical, only surgical services related to Gender Reassignment."

63.     On March 24, 2018, Plaintiff sent Defendant Priority Health a copy of the 2018 Certificate of Coverage provision regarding gender reassignment surgery, and asked for clarification since the policy was in conflict with the January 25, 2018 message contained in paragraph 62 above.

64. On March 27, 2018, Defendant Priority Health sent Plaintiff an email stating, "Per the 2018 COC, Covered Services: Covered Services - Gender reassignment surgery, including pre- and post-hormone therapy, is a Covered Services to the extent as required, limited, and/or enforceable by applicable state and/or federal law, and the above criteria is met, including being provided by a facility approved in advance by us. At this time, due to on-going Federal Injunction, will not be covering Gender Reassignment Surgery."

65. On December 31, 2016, the U.S. District Court for the Northern District of Texas issued a preliminary injunction in *Franciscan Alliance, Inc. et al* v *Burwell*, enjoining Health and Human Service's Office for Civil Rights ("HHS OCR") from enforcing Section 1557.

66. Upon information and belief, Defendant Priority Health's statement that they will not be covering gender reassignment surgery "due to on-going Federal Injunction," is a reference to the Texas District Court decision in *Franciscan Alliance*.

67. The Texas federal district court decision *Franciscan Alliance* applies to a federal government agency--HHS OCR--not individuals.

68. The Texas federal district court decision *Franciscan Alliance* does not apply to individuals in the state of Michigan.

69. The Texas federal district court decision *Franciscan Alliance* does not, and cannot enjoin federal courts in the U.S. Circuit Court of Appeals for the Sixth Circuit ("Sixth Circuit Court of Appeals") from enforcing Section 1557.

70. Upon information and belief, neither Defendant Priority Health, nor Defendant Spectrum Health are under a federal injunction preventing them from providing health care insurance coverage for gender reassignment surgery.

71. Upon information and belief, neither Defendant Priority Health, nor Defendant Spectrum Health have been "required" by state or federal legislation or court order to not provide health care insurance coverage for gender reassignment surgery.

72. Upon information and belief, neither Defendant Priority Health, nor Defendant Spectrum Health have been "limited" by state or federal legislation or court order in any manner which would prevent them from providing health care insurance coverage for gender reassignment surgery.

73. Section 1557 is enforceable in the Sixth Circuit Court of Appeals and in the U.S. District Court for the Western District Court of Michigan.

74. Defendant Priority Health's action in misrepresenting and misleading Plaintiff into believing that the they are legally barred from providing her coverage for a medically necessary surgery, evidences its discriminatory intent, motive and is a discriminatory action.

75. Defendant Priority Health's action in erroneously applying a decision from a U.S. District Court in Texas to their Certificate of Coverage provision regarding gender reassignment surgery, and using that erroneous decision to prevent Plaintiff from being able to obtain a medically necessary surgery evidences its discriminatory intent, motive and is a discriminatory action.

76. Defendant Spectrum Health has failed to provide insurance coverage for a significant portion of Plaintiff's medical treatment, including her surgeries.

77. As a direct result of Defendant Priority Health's failure to cover a significant portion of Plaintiff's medically necessary treatment for gender dysphoria, including her surgeries, Plaintiff suffered significant damages described in the counts below.

78. As a direct result of Defendant Spectrum Health's failure to provide insurance coverage for a significant portion of Plaintiff's medically necessary treatment for gender dysphoria,

including her surgeries, Plaintiff suffered significant damages described in the counts below.

79. Plaintiff's surgery-related expenses for the years 2012 to 2015 exceeded the sum of $41,000.

80. Plaintiff has not been able to have additional surgeries that she has needed and continues to need.

**Count I:  Defendants Spectrum Health and Priority Health – Section 1557 Discrimination**

81. Plaintiff incorporates by reference paragraphs 1 through 80 above into this paragraph.

82. Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 USC Section 18116 (2112) provides that "an individual shall not, on the ground prohibited under…title IX of the Education Amendments of 1972 (20 U.S.C. 1681, et seq.), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."

83. Title IX of the Educational Amendments of 1972 prohibits discrimination "on the basis of sex" and thus, Section 1557 also prohibits discrimination on the basis of sex.

84. Defendant Spectrum Health is a "health program or activity" which receives federal financial assistance, and is therefore a covered entity for the purposes of Section 1557.

85. Defendant Priority Health is a "health program or activity" which receives federal financial assistance, and is therefore a covered entity for the purposes of Section 1557.

86. On May 13, 2017, the U.S. Department of Health and Human Services issued a final rule ("Final Rule"). See Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31376 (May 18, 2016), to be codified at 45 C.R.R. pt. 92.

87. The Final Rule states that a "covered entity that provides an employee health benefit program to its employees and/or their dependents shall be liable for violation of [Section 1557] in that employee health benefit program" if "the entity is principally engaged in providing or administering health services." 45 C.F.R. 92.208(a).

88. Section 1557 has been in effect since the ACA became law in 2010.

89. Section 1557 had legal effect prior to the adoption of regulations relating to the law.

90. Defendant Spectrum Health is principally engaged in the business of providing health Services.

91. Under Section 1557, Defendant Spectrum Health is prohibited from excluding, adversely treating or otherwise discriminating against employees on the basis of sex in the terms, coverage and operation of its employer-sponsored healthcare insurance plan.

92. Defendant Priority Health is principally engaged in the business of providing health services.

93. Under Section 1557, Defendant Priority Health is prohibited from excluding, adversely treating or otherwise discriminating against its insures on the basis of sex in the terms, coverage and operation of its health care insurance plan.

94. Plaintiff's sex, that being a transgender woman, was a factor that made a difference in Defendants' decisions to subject her to the wrongful and discriminatory treatment described above.

95. Defendants, by their agents, representatives and employees, were predisposed to discriminate on the basis of sex and acted in accordance with that predisposition.

96. Defendants' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

97. If Plaintiff had a gender that was in congruence with the sex she was assigned at birth, she would not have been treated in the manner described in the above paragraphs.

98. Discrimination on the basis of transgender status or gender nonconformity is discrimination of the basis of "sex" under Section 1557.

99. Throughout all relevant times Defendants has had the opportunity and means to provide health care insurance to cover the medically necessary medications, procedures, surgeries, and other healthcare services for Plaintiff, and similarly situated transgender employees suffering from gender dysphoria.

100. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained significant damages, including but not limited to financial damages, loss of health care benefits, suffered mental anguish, physical, emotional and psychological distress, humiliation, loss of self-esteem and embarrassment.

101. Plaintiff seeks a declaratory judgment that Defendants must provide health insurance coverage for her medically necessary treatment for gender dysphoria including, gender confirmation surgeries.

102. Plaintiff suffered and seeks recovery for her financial, psychological, emotional and other damages described above, including but not limited to exemplary damages, compensatory damages and consequential damages, for her expenses, costs, attorney fees, and interest.

## Count II:  Defendant Sectrum Health - Title VII Discrimination

103. Plaintiff incorporates by reference paragraphs 1 through 102 above into this paragraph.

104. Defendant Spectrum Health provides insurance coverage for many similar or related health care services for employees who are not seeking treatment for gender dysphoria.

105. Defendant Spectrum Health provides insurance coverage for many similar or related health care services for employees who are not seeking treatment for gender dysphoria, where the necessity of the health care service is not as critical, or is considered cosmetic in nature.

106. Plaintiff's sex, that being a transgender woman, was a factor that made a difference in Defendants' decision to subject her to the wrongful and discriminatory treatment described above.

107. Defendant, by its agents, representatives and employees, were predisposed to discriminate on the basis of sex and acted in accordance with that predisposition.

108. Defendant's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

109. If Plaintiff had a gender that was in congruence with the sex she was assigned at birth, she would not have been treated in the manner described in the above paragraphs.

110. As a direct and proximate result of Defendant Spectrum Health's wrongful, discriminatory acts and omissions, Plaintiff has sustained significant damages, including but not limited to financial damages, loss of health care benefits, suffered mental anguish, physical, emotional and psychological distress, humiliation, loss of self-esteem and embarrassment.

111. Plaintiff seeks a declaratory judgment that Defendant Spectrum Health must provide health insurance coverage for her medically necessary treatment for gender dysphoria including, sex reassignment surgeries.

112. Plaintiff suffered and seeks recovery for her financial, psychological, emotional and other damages described above, including but not limited to exemplary damages, compensatory damages and consequential, damages, for her expenses, costs, attorney fees, and interest.

**Count III:  Defendant Priority Health – Fraud and Misrepresentation**

113. Plaintiff incorporates by reference paragraphs 1 through 112 above into this paragraph.

114. On January 25, 2018, Defendant Priority Health made a false statement to Plaintiff when it informed her that her medically necessary gender reassignment surgery is not covered by her insurance.

115. At the time, Defendant Priority Health made the statement contained in paragraph 114 above, it knew, or made the statement with a reckless disregard for the truth, which was and is that its Certificate of Coverage does include gender reassignment surgery.

116. At the time Defendant Priority Health made the statement contained in paragraph 114 above, it intended for Plaintiff to use and rely upon the false information.

117. Plaintiff did in fact rely upon and use the false statement set forth in paragraph 114 above, by making the decision to not have a doctor perform her necessary surgery.

118. As a result of Plaintiff's ongoing medical and psychological need for the sex reassignment surgery, along with her inability to pay for the surgery, on March 24, 2018, Plaintiff made another inquiry about her insurance coverage for her medically needed sex reassignment surgery.

119. On March 27, 2018, Defendant Priority Health made a false statement to Plaintiff, that being that a federal injunction prevented Priority Health from providing Plaintiff with health coverage for her gender reassignment surgery.

120. At the time, Defendant Priority Health made the statement contained in paragraph 119 above, it knew, or used a reckless disregard for the truth, that being that it was not, and is not under a federal injunction preventing it from providing insurance coverage for Plaintiff's gender reassignment surgery.

121.   At the time Defendant Priority Health made the statement contained in paragraph 119 above, it intended for Plaintiff to use and rely upon the false information.

122.   Plaintiff did in fact rely upon and use the false statement set forth in paragraph 119 above, by making the decision to not have a doctor perform her necessary surgery.

123.   As a direct and proximate result of Defendant Priority Health's wrongful acts and omissions, Plaintiff has sustained significant damages, including but not limited to financial damages, loss of health care benefits, suffered mental anguish, physical, emotional and psychological distress, humiliation, loss of self-esteem and embarrassment.

124.   Plaintiff seeks a declaratory judgment that Defendant Priority Health must provide health insurance coverage for her medically necessary treatment for gender dysphoria including, sex reassignment surgeries.

125.   Plaintiff suffered and seeks recovery for her financial, psychological, emotional and other damages described above, including but not limited to exemplary damages, compensatory damages and consequential, damages, for her expenses, costs, attorney fees, and interest.

### **Count IV:  Defendant Priority Health – Alternative Claim to Count III, Negligent Misrepresentation**

126.   Plaintiff incorporates by reference paragraphs 1 through 125 above into this paragraph.

127.   This count is an alternative claim to Plaintiff's fraud and misrepresentation claim contained in Count III of this complaint.

128.   On January 25, 2018, Defendant Priority Health with negligence, made a false negligent statement to Plaintiff when it informed her that her medically necessary gender reassignment surgery is not covered by her insurance.

129. At the time, Defendant Priority Health made the statement contained in paragraph 128 above, it acted in a negligent manner regarding the truthfulness of the statement, which was and is that Plaintiff's insurance plan does include gender reassignment surgery.

130. At the time Defendant Priority Health made the statement contained in paragraph 128 above, it intended for Plaintiff to use and rely upon the false information.

131. Plaintiff did in fact rely upon and use the false statement set forth in paragraph 128 above, by making the decision to not have a doctor perform her necessary surgery.

132. As a result of Plaintiff's ongoing medical and psychological need for the sex reassignment surgery, along with her inability to pay for the surgery, on March 24, 2018, Plaintiff made another inquiry about her insurance coverage for her medically needed sex reassignment surgery.

133. On March 27, 2018, Defendant Priority Health, with negligence, made a false statement to Plaintiff, that being that a federal injunction prevented Priority Health from providing Plaintiff with health coverage for her gender reassignment surgery.

134. At the time, Defendant Priority Health made the statement contained in paragraph 133 above, it acted negligently in regards to the truth of that statement, that being that Priority Health was not, and is not under a federal injunction preventing it from providing insurance coverage for Plaintiff's gender reassignment surgery.

135. At the time Defendant Priority Health made the statement contained in paragraph 133 above, it intended for Plaintiff to use and rely upon the false information

136. Plaintiff did in fact rely upon and use the false statement set forth in paragraph 133 above, by making the decision to not have a doctor perform her necessary surgery.

137. As a direct and proximate result of Defendant Priority Health's wrongful acts and omissions, Plaintiff has sustained significant damages, including but not limited to financial damages, loss of health care benefits, suffered mental anguish, physical, emotional and psychological distress, humiliation, loss of self-esteem and embarrassment.

138. Plaintiff seeks a declaratory judgment that Defendant Prior Health must provide health insurance coverage for her medically necessary treatment for gender dysphoria including, sex reassignment surgeries.

139. Plaintiff suffered and seeks recovery for her financial, psychological, emotional and other damages described above, including but not limited to exemplary damages, compensatory damages and consequential, damages, for her expenses, costs, attorney fees, and interest.

      WHEREFORE, Plaintiff requests:

      A.    damages, including Plaintiff's out-of-pocket, unpaid, any ongoing and future costs, for her health care expenses related to and incurred as a result to Defendants' actions described herein;

      B.    compensatory damages for mental anguish, and emotional distress;

      C.    punitive damages;

      D.    injunctive relief as may be needed to require Defendants to provide and maintain health care coverage and health care insurance which will cover the health care issues which are the subject of this complaint, in an amount and manner consistent with reasonable limits which apply to all other health-related coverage provided by Defendants;

      E.    reasonable attorney fees and costs;

      F.    interest as allowed by law; and

      G.    any other equitable or other relief as may be deemed just and reasonable.

## **Demand for Trial by Jury**

      Plaintiff demands a trial by jury in this matter.


April 13, 2018                                                                                  /s/[Christine A. Yared]
                                                                                            Christine A. Yared
                                                                                          *Christine A. Yared, PLC*
                                                                                          Attorney for Plaintiff
                                                                                          2503 Mason Ridge Court NE
                                                                                          Grand Rapids, MI  49525
                                                                                          616.363.9041
                                                                                          cayared@comcast.net